

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

FRANK "FOOTLOOSE" STAPLES AND JASON GERHARD, APPELLANTS
v.
UNITED STATES OF AMERICA, APPELLEE

Case No. 1:24-po-00011-TSM


**Response to Government's Reply Brief**


I. Introduction

Appellants Frank "Footloose" Staples and Jason Gerhard respectfully submit this response to the government's reply, which fails to adequately address critical jurisdictional and constitutional arguments raised in the original appeal brief. In doing so, the government has ignored key procedural defects, misapplied legal principles, and violated the appellants' constitutional rights.

At the heart of this case are three fundamental issues as well as novel arguments:

1. Failure to Establish Federal Jurisdiction: The government did not establish jurisdiction over 55 Pleasant Street under RSA 123:1. This statute outlines the required process for ceding jurisdiction to the federal government, which the government has failed to follow or prove was followed. As a result, New Hampshire retains exclusive jurisdiction over the property, invalidating the federal charges brought against Staples and Gerhard.

2. Constitutional Violations: The appellants' First Amendment, Fourth Amendment, and New Hampshire Constitutional rights were violated during the proceedings. These violations include the unlawful restriction of the appellants' right to record government officials in a public space, the confiscation of Staples' phone without due process, and the failure to provide a valid court order or legal basis for the restrictions imposed.

3. Misapplication of Local Rule 83.8: The government has improperly applied Local Rule 83.8, which governs courtroom procedures, to justify restricting the appellants' activities in a public space. This misapplication has no legal basis, as the rule does not extend to areas outside the courtroom, such as the lobby where the appellants were recording.


This response will address each of these deficiencies in turn, outlining the government's failure to fully engage with the arguments presented in the appellants' original appeal brief. The

government's inability to prove jurisdiction, coupled with its disregard for constitutional protections, warrants the dismissal of the charges against Staples and Gerhard.

---

II. Lack of Federal Jurisdiction Over 55 Pleasant Street (RSA 123:1)

The government has not established that it holds exclusive jurisdiction over 55 Pleasant Street, the site of the alleged offense. Jurisdiction over federal lands in New Hampshire is not automatic and must be obtained through formal procedures under RSA 123:1. These procedures require the federal government to submit specific documentation, and the state must formally cede jurisdiction. Without compliance, New Hampshire retains exclusive jurisdiction, rendering the federal charges invalid.

1. Full Requirements Under RSA 123:1

RSA 123:1 sets out the legal framework for ceding jurisdiction over land to the federal government:

 "Jurisdiction is ceded to the United States of America over all lands within this state now or hereafter exclusively owned by the United States, and used as sites for post offices, custom-houses, military air bases, military installations or other public buildings: provided, that an accurate description and plan of the lands so owned and occupied, verified by the oath of some officer of the United States having knowledge of the facts, shall be filed with the secretary of this state; and, provided, further, that this cession is upon the express condition that the state of New Hampshire shall retain concurrent jurisdiction with the United States in and over all such lands, so far that all civil and criminal process issuing under the authority of this state may be executed on the said lands and in any building now or hereafter erected thereon, in the same way and with the same effect as if this statute had not been enacted; and that exclusive jurisdiction shall revert to and revest in this state whenever the lands shall cease to be the property of the United States."
(RSA 123:1).

For jurisdiction to be ceded, an accurate description and plan of the lands must be filed with the New Hampshire Secretary of State, verified by a federal officer with knowledge of the facts. Furthermore, even when jurisdiction is ceded, New Hampshire retains concurrent jurisdiction, meaning state authorities may still execute civil and criminal process on the property.

The government has presented no evidence that the United States ever complied with this statutory requirement for 55 Pleasant Street. Without such proof, New Hampshire retains exclusive jurisdiction.

2. Misplaced Reliance on United States v. Gerhard (2010)

The government incorrectly relies on United States v. Gerhard (2010) to assert federal jurisdiction over 55 Pleasant Street. However, the 2010 Gerhard case involved Jason Gerhard's support for Ed and Elaine Brown in a standoff with federal authorities on private property. The case focused on federal criminal statutes related to obstruction of justice and tax evasion and did not address federal jurisdiction over land under RSA 123:1.

The 2010 Gerhard case is fundamentally distinct from the present case for the following reasons:

Private Property vs. Federal Property: The 2010 Gerhard case concerned events on private property. Here, the government claims federal jurisdiction over 55 Pleasant Street, but it has failed to establish the proper legal foundation under RSA 123:1.

Different Legal Context: The 2010 case addressed criminal charges unrelated to land jurisdiction, while the present case hinges on whether the federal government followed the required legal steps to acquire jurisdiction over the property.

Without proof of cession under RSA 123:1, the government's reliance on Gerhard (2010) is irrelevant.

3. Newington v. Campanella: Legal Precedent on Jurisdiction

The New Hampshire Supreme Court in Newington v. Campanella Construction Co. made clear that jurisdiction is not assumed by the federal government unless the proper legal procedures have been followed:

 "Until jurisdiction is formally accepted by the United States, the territorial jurisdiction of the state continues."
(Newington v. Campanella, 103 N.H. 211, 168 A.2d 696 (1961)).

This precedent underscores that New Hampshire retains jurisdiction unless the federal government formally accepts jurisdiction by following the statutory requirements of RSA 123:1. No such evidence of formal acceptance has been presented, so New Hampshire's jurisdiction over 55 Pleasant Street remains intact.

4. Inadequate Proof Presented at Trial: Reliance on Hearsay Testimony

At trial, the government's sole evidence regarding jurisdiction was the testimony of DHS Officer Michael Plant, who stated that the General Services Administration (GSA) had informed him that the federal government owned the property. This is inadmissible hearsay, as Officer Plant

had no personal knowledge of the property's legal status. The government did not present any official documentation, such as a description and plan filed with the New Hampshire Secretary of State, nor did it produce any witnesses with firsthand knowledge of the jurisdictional process.

The Supreme Court has emphasized the importance of establishing jurisdiction with competent evidence. In Steel Co. v. Citizens for a Better Environment, the Court stated:

> "Jurisdiction is power to declare the law, and without it, the court cannot proceed at all in any cause. Jurisdiction must be established as a threshold matter before the court can address the merits."
(Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998)).


Without admissible evidence proving jurisdiction, the government has not met its burden.

5. Ownership vs. Jurisdiction: A Critical Distinction

The government may argue that it owns the property at 55 Pleasant Street, but ownership does not automatically confer jurisdiction. Even if the federal government owns or leases the building, jurisdiction must be formally accepted through the process outlined in RSA 123:1. As discussed in Major Douglas' article, jurisdiction is a legal concept that is separate from ownership:

"Whereas ownership is the actual control of the rights associated with a parcel, jurisdiction is '[a] government's general power to exercise authority over all persons and things within its territory.'"


Thus, even if the federal government owns 55 Pleasant Street, it does not necessarily have exclusive jurisdiction, especially when it has failed to comply with RSA 123:1 and 40 U.S.C. § 3112.

6. Concurrent Jurisdiction Under RSA 123:1

Even if the federal government had completed the cession process under RSA 123:1 (which it has not), the statute explicitly provides for concurrent jurisdiction, meaning that New Hampshire retains substantial authority over the property. RSA 123:1 ensures that civil and criminal process under state law can still be executed on federal lands:

"This cession is upon the express condition that the state of New Hampshire shall retain concurrent jurisdiction with the United States in and over all such lands, so far that all civil and criminal process issuing under the authority of this state may be executed on the said lands..."

The government has failed to address this critical statutory condition, further undermining its argument for exclusive jurisdiction.

7. New Hampshire Constitution, Part I, Article 7: Protection of State Sovereignty

Part I, Article 7 of the New Hampshire Constitution affirms the state's sovereignty and independence from federal overreach:

"The people of this State have the sole and exclusive right of governing themselves as a free, sovereign, and independent State; and do, and forever hereafter shall, exercise and enjoy every power, jurisdiction, and right pertaining thereto, which is not, or may not hereafter be, by them expressly delegated to the United States of America in Congress assembled."

This constitutional provision reinforces the principle that New Hampshire retains sovereignty over its land and people unless jurisdiction is expressly delegated to the federal government. By failing to follow the legal procedures outlined in RSA 123:1, the federal government has encroached on New Hampshire's sovereignty, violating its constitutional rights.

---

Section Summary: Lack of Federal Jurisdiction

The government has not met the legal requirements under RSA 123:1 or 40 U.S.C. § 3112 to establish exclusive federal jurisdiction over 55 Pleasant Street. The failure to file an accurate description and plan with the New Hampshire Secretary of State means that New Hampshire retains exclusive jurisdiction over the property. The government's reliance on the Gerhard (2010) case is irrelevant and does not support its jurisdictional claims in this case, which involves different legal issues and property. Moreover, RSA 123:1 provides for concurrent jurisdiction, meaning the state retains authority even if jurisdiction had been ceded. Finally, New Hampshire's sovereignty under Part I, Article 7 further asserts the state's rights in this matter.

As the federal government has failed to properly establish jurisdiction, the charges against Staples and Gerhard should be dismissed.

---

III. Violation of Due Process Rights

1. Failure to Establish Jurisdiction at Arraignment

At the outset of the proceedings, both Staples and Gerhard raised challenges regarding the court's jurisdiction. Despite these challenges, the magistrate judge failed to adequately explain or prove the court's authority to proceed. Jurisdiction is a threshold issue that must be established at the very beginning of any legal proceeding, particularly when the court's jurisdiction is directly challenged.

The Supreme Court in Steel Co. v. Citizens for a Better Environment reaffirmed the principle that jurisdiction must be established before the court can proceed with any legal matter:

"Jurisdiction is power to declare the law, and without it, the court cannot proceed at all in any cause."
(Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998)).


In this case, the magistrate judge did not clarify the legal basis for jurisdiction, even when explicitly asked. Both Staples and Gerhard repeatedly questioned the court's jurisdiction during their arraignments, but these questions were left unanswered, which constitutes a clear due process violation. The government bore the burden of proving that it had jurisdiction over the property in question and the defendants, but it did not provide any clear legal justification for the court's authority.

The Supreme Court has long held that jurisdictional challenges must be resolved before a case can proceed. In Gonzalez v. Thaler, the Court emphasized that jurisdictional challenges can be raised at any stage of the proceedings, and the failure to establish jurisdiction can undermine the validity of the entire trial:

"When a jurisdictional flaw is apparent, the court is obligated to resolve it before proceeding."
(Gonzalez v. Thaler, 565 U.S. 134 (2012)).


By failing to clarify or establish jurisdiction during the arraignment and throughout the trial, the court violated Staples' and Gerhard's due process rights under the Fifth Amendment of the U.S. Constitution and Article 15 of the New Hampshire Constitution.


---

2. Unlawful Confiscation of Staples' Phone

DHS Officer Michael Plant unlawfully confiscated Staples' phone without a court order, warrant, or any legal justification, in direct violation of Staples' Fourth Amendment rights. This seizure occurred after the trial had already commenced, during which the judge allowed Staples to retrieve his phone to use as part of his defense. Despite being permitted to use the phone,

Officer Plant took the phone while the court proceedings were still ongoing, without any legal authorization to do so.

A. Fourth Amendment Violations

The Fourth Amendment protects individuals from unreasonable searches and seizures of their property. In this case, Staples was deprived of his property without any judicial process or court directive. The Supreme Court in Riley v. California stressed the importance of protecting individuals' privacy rights when it comes to personal cell phones:

"Modern cell phones... hold for many Americans 'the privacies of life.' The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of protection."
(Riley v. California, 573 U.S. 373 (2014)).

The seizure of Staples' phone—which contained critical evidence for his defense—constituted an unreasonable seizure in violation of the Fourth Amendment. Officer Plant did not have a valid warrant, court order, or probable cause to justify the confiscation, making the seizure unconstitutional.

Additionally, Officer Plant was not part of the designated court security team that should have handled such matters. U.S. Marshals and court security officers were present in the courtroom, and if any seizure was warranted, they would have been the proper authorities to act. Officer Plant's unilateral decision to confiscate Staples' phone without judicial authorization only highlights the arbitrary nature of the seizure and further supports the argument that it was unlawful.

B. Violations of the New Hampshire Constitution, Articles 2-B and 19

The New Hampshire Constitution provides additional protections against unreasonable searches and seizures through Articles 2-B and 19. These provisions protect individuals' right to privacy and freedom from arbitrary government action:

Article 2-B states:

"An individual's right to live free from governmental intrusion in private or personal information is natural, essential, and inherent."

Article 19 provides:

"Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions."

By confiscating Staples' phone without any legal process, Officer Plant violated both Staples' privacy rights under Article 2-B and his right to be free from unlawful seizures under Article 19.

C. Procedural Due Process Violations

The ongoing confiscation of Staples' phone without legal process or documentation also constitutes a violation of due process. Under the Fifth Amendment to the U.S. Constitution, no individual can be deprived of their property without due process of law. Similarly, Article 15 of the New Hampshire Constitution guarantees individuals the right to due process before being deprived of their property.

The Supreme Court in Fuentes v. Shevin articulated the importance of legal process before property can be seized:

"The right to be heard before being deprived of property is a basic principle of our constitutional system. To cut off a person's property rights without a hearing and without notice to him violates the Due Process Clause."
(Fuentes v. Shevin, 407 U.S. 67, 80 (1972)).

Here, Staples was deprived of his phone without any legal notice, hearing, or explanation. The government has failed to provide any documentation or valid justification for the confiscation, which continues to this day without any recourse for Staples to recover his property.

D. Failure to Return the Phone

Staples was promised that his phone would be returned outside the courthouse after the proceedings, but when he exited, Officer Plant failed to return the phone. The lack of transparency around this action further calls into question the legality of the seizure. Staples has made multiple attempts to retrieve his phone, contacting the U.S. Marshals, the court clerk, and court security officers, but none of these entities provided any documentation or information regarding the phone's whereabouts.

This continued deprivation of property without any legal cause or documentation further exacerbates the due process violations. To this day, Staples has not received any written explanation or receipts for the confiscation, nor has he been able to recover his phone. This continued refusal to return the phone without any legal justification violates Staples' due process rights under both federal and state law.

---

Section Summary: Violation of Due Process Rights

The court's failure to establish jurisdiction at the outset of the proceedings, coupled with the unlawful confiscation of Staples' phone, constitutes significant due process violations under both the U.S. Constitution and the New Hampshire Constitution. The government failed to prove its jurisdiction and unlawfully deprived Staples of his property without due process of law.

The charges against Staples and Gerhard should be dismissed, or in the alternative, the court should order the immediate return of Staples' phone and allow further inquiry into the due process violations that have tainted this entire proceeding.

---

IV. Right to Record as Self-Defense Under Article 2-A of the New Hampshire Constitution

1. Recording as a Form of Self-Defense

Article 2-A of the New Hampshire Constitution protects the right to bear arms, stating:

"All persons have the right to keep and bear arms in defense of themselves, their families, their property, and the state."
(New Hampshire Constitution, Part I, Article 2-A).

While traditionally understood in the context of firearms, Article 2-A can be interpreted more broadly to include non-lethal tools of self-defense, such as recording devices. In today's digital age, recording interactions with law enforcement and government officials can serve as a crucial form of self-defense, protecting citizens from potential abuses of power and ensuring transparency in government actions.

Recording the events at 55 Pleasant Street was an act of self-defense by Staples and Gerhard, safeguarding their rights and documenting their interactions with government officials. The right to record serves as both a defense mechanism and a tool to protect constitutional rights in public spaces, particularly when it comes to government accountability.

2. Article 2-A and Modern Tools of Defense

Article 2-A is not limited to traditional arms such as firearms. Recording devices can also be considered tools of self-defense, ensuring individuals can document interactions with government officials, thereby preserving their constitutional rights. This interpretation is supported by District of Columbia v. Heller, where the Supreme Court acknowledged that self-defense is central to the protections offered by the Second Amendment:

"The inherent right of self-defense has been central to the Second Amendment right."
(District of Columbia v. Heller, 554 U.S. 570, 628 (2008)).

In the same way that firearms are protected under Article 2-A, recording devices can also be seen as tools for protecting oneself from government overreach, particularly when those recordings serve as a check against potential violations of rights by law enforcement or other officials.

3. The Recognition of Recording Rights in Public Spaces

The First Circuit Court of Appeals, in Glik v. Cunniffe (2011), recognized that recording public officials performing their duties in public spaces is a constitutionally protected activity under the First Amendment. This ruling is directly applicable to the actions of Staples and Gerhard in the lobby of 55 Pleasant Street:

"The First Amendment protects the filming of government officials in public spaces as a means of protecting our liberty."
(Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011)).

In Staples' case, the act of recording was an extension of his constitutional right to defend himself against potential abuses and document the events for transparency. This right was further reinforced during his second arrest, where the DHS officer allowed him to continue recording after Staples informed him that shutting off the camera would violate Glik v. Cunniffe. This acknowledgment of the right to record during the second arrest underscores the inconsistency in the government's enforcement of recording restrictions.

4. DHS Memo on Photography and Videotaping

The DHS memo on Photography and Videotaping on Federal Property provides clear guidance that recording in public spaces within federal buildings, including lobbies, is allowed. Nowhere in the memo does it specify exceptions that would apply to areas like the lobby of 55 Pleasant Street, further undermining the government's restrictions on Staples' and Gerhard's right to record.

This memo supports the appellants' argument that they were within their rights to record in the public forum of the lobby, and the government's attempt to restrict that right lacked legal basis. The memo aligns with the protections granted by Glik v. Cunniffe and Article 2-A, further reinforcing the appellants' constitutional right to document their interactions with government officials.

5. Public Forum and Government Transparency

The lobby of 55 Pleasant Street, where the recording took place, constitutes a public forum. As established in United States v. Grace, public areas like streets, sidewalks, and lobbies are spaces where individuals enjoy heightened constitutional protections for free speech and other expressive activities, including recording:

"Public places historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.' In such places, the government's ability to permissibly restrict expressive conduct is very limited." (United States v. Grace, 461 U.S. 171, 177 (1983)).

Staples and Gerhard were recording in a public forum, where the government's restrictions on their recording were not legally justified. The right to record government officials in public spaces ensures government transparency and serves as a tool to safeguard constitutional rights.

6. Selective Enforcement of Recording Restrictions

The government's enforcement of recording restrictions in the James C. Cleveland Federal Building has been arbitrary and inconsistent. Certain civil proceedings and immigration ceremonies have been allowed to be recorded, while the recording of public interactions with law enforcement, as in the appellants' case, was selectively restricted. This selective enforcement violates the appellants' equal protection rights under the Fourteenth Amendment and Article 2 of the New Hampshire Constitution.

In Yick Wo v. Hopkins, the Supreme Court held that laws applied unequally or arbitrarily violate the Equal Protection Clause:

"Though the law itself be fair on its face and impartial in appearance, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations... the denial of equal justice is... a denial of equal protection of the laws."
(Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886)).

The appellants were unjustly singled out for recording in the lobby, while others were permitted to record similar events. This inconsistent enforcement further demonstrates the arbitrary nature of the charges brought against them.

7. Lack of a Clear Process for Obtaining Permission to Record

When the appellants attempted to inquire about permission to record in the lobby, they were informed that permission could only be granted for courtroom activities with a case number. This lack of a clear process for obtaining permission to record in public spaces, such as the lobby,

highlights the government's failure to provide a lawful basis for restricting recording. Local Rule 83.8, which governs courtroom procedures, does not extend to public spaces like the lobby. The government's failure to present any valid court order or signage prohibiting recording in the lobby further demonstrates that the restrictions placed on Staples and Gerhard were unlawful.

---

Section Summary: Right to Record Under Article 2-A

The appellants' right to record government officials in a public space is protected under Article 2-A of the New Hampshire Constitution and under the First Amendment. Recording in this context serves as a form of self-defense, ensuring transparency and accountability in government interactions. The Glik v. Cunniffe case, along with other First Amendment precedent, supports the appellants' right to record in the public forum of the lobby at 55 Pleasant Street. The government's selective enforcement of recording restrictions and failure to provide a clear process for obtaining permission to record further demonstrates that the appellants' constitutional rights were violated.

The charges against Staples and Gerhard should be dismissed on the grounds that their right to record was unlawfully restricted, in violation of both Article 2-A and the First Amendment.

---

V. Misapplication of Local Rule 83.8

1. Scope of Local Rule 83.8

The scope of Local Rule 83.8 is explicitly limited to courtroom decorum and applies solely to judicial proceedings within the courtroom. The rule is meant to govern the conduct of individuals during active judicial proceedings and does not extend to public spaces like lobbies, hallways, or other non-courtroom areas in the courthouse. The rule's scope is directly outlined in the Combined Local Rules as follows:

"The taking of photographs, the recording or broadcasting of judicial proceedings, and the use of broadcasting equipment in the courtroom or its environs during the progress of judicial proceedings, whether or not court is actually in session, is prohibited unless approved by the presiding judge."
(Local Rule 83.8, Combined Local Rules).

The reference to the presiding judge is critical in understanding the limitations of Local Rule 83.8. The presence of a presiding judge is required to enforce the rule's restrictions, which

inherently means that Local Rule 83.8 only applies to courtroom procedures. There is never a presiding judge overseeing the activities in hallways or lobbies, which confirms that the rule cannot govern conduct in these areas. This further underscores that Local Rule 83.8 applies solely to judicial proceedings inside the courtroom.

By applying this rule to restrict Staples' and Gerhard's recording in the lobby of 55 Pleasant Street, the government misapplied the rule's scope. The lobby is a public space, not a courtroom, and there was no presiding judge involved in overseeing any proceedings in that space.

2. Public Spaces Are Not Governed by Local Rule 83.8

The lobby of the James C. Cleveland Federal Building is a public forum, and as such, it is not subject to the restrictions outlined in Local Rule 83.8. In fact, a plaque in the lobby dedicates the building as "a pleasing public forum for the citizens of New Hampshire," reinforcing its status as a public space where individuals are entitled to engage in expressive activities, including recording.

In United States v. Grace, the Supreme Court recognized the heightened constitutional protection afforded to public forums like streets, sidewalks, and lobbies, where individuals are entitled to engage in expressive activities, including recording:

"Public places historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.' In such places, the government's ability to permissibly restrict expressive conduct is very limited." (United States v. Grace, 461 U.S. 171, 177 (1983)).

Because Local Rule 83.8 governs only courtroom proceedings under the authority of a presiding judge, it cannot apply to public spaces like the lobby of 55 Pleasant Street, where no court proceeding was taking place. The lobby is not a space subject to courtroom restrictions, and the plaque in the lobby further underscores its role as a public forum.

3. 41 CFR § 102-74.420 and the DHS Memo

Federal regulations, including 41 CFR § 102-74.420, explicitly allow recording in public spaces within federal buildings, such as lobbies, foyers, and corridors, unless specifically prohibited by a court order or security regulation. The regulation states:

"Except where security regulations, rules, orders, or a court order prohibit it, persons entering in or on federal property may take photographs of space occupied by a tenant agency for non-commercial purposes, building entrances, lobbies, foyers, corridors, or auditoriums for news purposes..."
(41 CFR § 102-74.420).

Additionally, the DHS memo on Photography and Videotaping on Federal Property reiterates that recording in public areas of federal buildings is permissible unless expressly prohibited by a valid court order or specific security regulation. In this case, no such court order or security regulation was provided at trial to justify prohibiting recording in the lobby of 55 Pleasant Street.

4. No Court Order Presented, and Lack of Case Number

The government failed to produce a court order prohibiting recording in the lobby during trial, which is critical because Local Rule 83.8 requires a court case number for any proceedings within the courtroom where restrictions apply. Since the lobby is not part of the courtroom, and no court case number or judicial proceeding was associated with the space, the restrictions imposed on Staples and Gerhard lacked any legal basis.

For Local Rule 83.8 to be applicable, there must be a valid court case in progress, overseen by a presiding judge. Without a case number or a direct order from the presiding judge, Local Rule 83.8 cannot be applied to restrict activities outside the courtroom, particularly in a public space like the lobby. The absence of such a court order or evidence of a relevant case number at trial further demonstrates that the charges against Staples and Gerhard were based on an invalid application of the rule.

5. Scope of the Rule: Applicability to Civil and Criminal Proceedings in the Courtroom

The scope of Local Rule 83.8 is limited to the management of civil and criminal proceedings taking place inside the courtroom. Its purpose is to ensure that courtroom activities such as photography, broadcasting, and recording do not interfere with judicial proceedings. The rule's application is confined to the courtroom environment, under the authority of a presiding judge, and does not extend beyond active judicial proceedings.

In this case, Staples and Gerhard were recording in the lobby, which is not part of any active courtroom proceeding. As there was no ongoing civil or criminal proceeding in the lobby and no valid court order or case number provided, Local Rule 83.8 was misapplied, and the appellants' actions were lawful.

6. No Clear Process for Recording Permission

When Staples and Gerhard inquired about obtaining permission to record, they were informed that permission could only be granted for courtroom activities with a case number. This reflects the limited scope of Local Rule 83.8, which applies only to courtroom activities directly tied to a judicial case overseen by a presiding judge. The lack of a formal process for obtaining permission to record in public spaces like the lobby further illustrates that Local Rule 83.8 was never intended to regulate behavior outside the courtroom.

Without a process in place for public spaces and no court order prohibiting recording in the lobby, the restrictions imposed on Staples and Gerhard were unjustified.

---

Section Summary: Misapplication of Local Rule 83.8

The government's reliance on Local Rule 83.8 to restrict Staples' and Gerhard's recording in the lobby of 55 Pleasant Street is a clear misapplication of the rule. Local Rule 83.8 governs only courtroom procedures and applies only to judicial proceedings that involve a case number and a presiding judge. The government did not provide any valid court order or signage prohibiting recording in the lobby, and federal regulations such as 41 CFR § 102-74.420 and the DHS memo support the appellants' right to record in public spaces. The plaque in the lobby dedicating the building as "a pleasing public forum for the citizens of New Hampshire" further underscores its status as a public space.

The charges brought against Staples and Gerhard should be dismissed on the grounds that Local Rule 83.8 was improperly applied to restrict their recording activities in a public space where they had a constitutional right to record.

---

VI. Unlawful Confiscation of Staples' Phone

1. Violation of Fourth Amendment and New Hampshire Constitutional Rights

The confiscation of Staples' phone during the trial by DHS Officer Michael Plant constitutes a violation of Staples' Fourth Amendment rights, which protect against unreasonable searches and seizures. Under the Fourth Amendment of the United States Constitution, any seizure of personal property must be supported by a valid warrant, court order, or legal authorization. At no point during the trial or subsequent interactions did Plant or any other officer provide a valid warrant or court order justifying the seizure of Staples' phone.

Additionally, the confiscation violated New Hampshire Constitutional protections under Part I, Article 19, which similarly prohibits unreasonable searches and seizures:

"Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions."
(New Hampshire Constitution, Part I, Article 19).

The unlawful confiscation of Staples' phone occurred without the requisite legal process, violating both his Fourth Amendment rights and his New Hampshire constitutional protections.

2. No Documentation or Due Process

The confiscation of Staples' phone was carried out without any formal documentation or adherence to due process. Staples has not received any receipt, documentation, or explanation from the court or DHS Officer Plant regarding the confiscation of his phone. This lack of documentation or formal process further violates Staples' due process rights under the Fifth Amendment of the United States Constitution, which guarantees the right to be informed of the nature of any legal actions taken against a person or their property.

Furthermore, despite multiple inquiries made by Staples to the clerk of court, the U.S. Marshals, and court security officers, no one provided any explanation or documentation for the seizure of his phone. The lack of a proper judicial process or justification for the confiscation renders it unlawful.

3. Unlawful Action by DHS Officer Michael Plant

The confiscation of Staples' phone was carried out by DHS Officer Michael Plant, who was not authorized to seize Staples' property. Plant, a witness in the case, took it upon himself to confiscate the phone, even though he was not instructed to do so by the presiding judge or any other court authority. In fact, Staples was surrounded by U.S. Marshals and court security officers, whose responsibility it was to handle any issues regarding courtroom security or potential contempt of court. However, Plant, who had been seated in the gallery after completing his testimony, took the initiative to unlawfully seize Staples' phone without any directive from the court.

Moreover, Staples was told by court security that he would be allowed to retrieve his phone outside the courtroom after the hearing, but Plant kept the phone and falsely claimed that it had been seized by order of the judge. This misrepresentation of authority further underscores the unlawfulness of Plant's actions.

4. Self-Defense: Right to Record

The confiscation of Staples' phone also infringed upon his right to record as an act of self-defense under Article 2-A of the New Hampshire Constitution, which guarantees the right to defend oneself and one's property:

"All persons have the right to keep and bear arms in defense of themselves, their families, their property, and the state."
(New Hampshire Constitution, Part I, Article 2-A).

In this case, Staples was using his phone to record the events of the trial as a form of self-defense, ensuring that he could document the proceedings for his own records and to defend his constitutional rights. Recording the trial was particularly important because it allowed Staples to create a personal record of the trial proceedings, especially given that court records were incomplete and the trial was ongoing. Staples was denied the right to create this record when his phone was unlawfully confiscated.

5. Continued Deprivation of Property

To this day, Staples' phone has not been returned, and no formal documentation regarding its confiscation has been provided. The deprivation of Staples' property without legal justification constitutes an ongoing violation of his constitutional rights. The government has neither provided an explanation for the seizure nor offered any legal basis for the continued withholding of his property, further compounding the violations of Staples' due process and property rights.

The continued deprivation of Staples' phone without any valid legal basis or documentation constitutes an unlawful seizure under both federal and state law. Staples has the right to demand the immediate return of his property, and the failure to provide documentation or justification for its seizure further underscores the arbitrary and unconstitutional nature of the government's actions.

---

Section Summary: Unlawful Confiscation of Staples' Phone

The seizure of Staples' phone by DHS Officer Michael Plant was unlawful and violated both federal and state constitutional rights. The government failed to provide a warrant, court order, or any legal justification for the seizure, and Staples has been denied the ability to retrieve his phone or receive documentation explaining its confiscation. The lack of due process and continued deprivation of Staples' property further violate his Fourth Amendment rights, his Fifth Amendment due process rights, and his rights under Part I, Article 19 of the New Hampshire Constitution.

For these reasons, the court should order the immediate return of Staples' phone, and the charges against him should be dismissed due to the constitutional violations arising from the unlawful confiscation of his property.

---

VII. Due Process Violations

1. Failure to Establish Jurisdiction at Arraignment

One of the most significant due process violations in this case was the court's failure to clearly establish jurisdiction at the arraignment. Jurisdiction is a foundational issue that must be established before a court can proceed with any legal actions. Both Staples and Gerhard raised challenges to the court's jurisdiction during their arraignments, and the court failed to provide a clear and direct response. Instead, the magistrate judge simply dismissed these concerns without offering any legal explanation or articulation of the jurisdiction being exercised.

Without the establishment of jurisdiction, the entire legal process is rendered invalid. As the Supreme Court held in Steel Co. v. Citizens for a Better Environment, a court cannot adjudicate any issue before confirming its own jurisdiction:

"The requirement that jurisdiction be established as a threshold matter... is 'inflexible and without exception.'"
(Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998)).

In Gonzalez v. Thaler, the Court reiterated that jurisdictional challenges can be raised at any stage of the proceeding, and that the court must address these challenges before proceeding to the merits of the case:

"When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."
(Gonzalez v. Thaler, 565 U.S. 134, 141 (2012)).

The court's refusal to clarify the legal basis for its jurisdiction over the events at 55 Pleasant Street at the arraignment stage violates Staples' and Gerhard's due process rights. Without a clear articulation of jurisdiction, the proceedings should have ceased, and the failure to address this issue undermines the legitimacy of the entire trial.

2. Refusal to Provide a Written or Audio Decision

Another due process violation occurred when the court refused to provide a written or audio decision at the conclusion of the trial. Staples and Gerhard were not given a clear explanation of the court's findings or the legal basis for the ruling. Under Federal Rule of Criminal Procedure 23(c), the court is required to make specific findings of fact in a written decision or in open court when requested by a party:

"In a case tried without a jury, the court must find the defendant guilty or not guilty. If a party requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision."
(Fed. R. Crim. P. 23(c)).

The failure to issue a written or audio decision deprived Staples and Gerhard of a meaningful appellate review. Without a clear record of the court's findings, it is nearly impossible for them to challenge the court's ruling effectively. The Fifth Amendment's Due Process Clause guarantees the right to understand and challenge the government's actions. The court's refusal to provide a decision is a clear violation of this guarantee, as it denied Staples and Gerhard the ability to prepare a proper appeal.

3. Procedural Irregularities: Confiscation of Evidence and Hindrance to Defense

The trial was also plagued by procedural irregularities that significantly hindered Staples' ability to present his defense. These irregularities include:

Confiscation of Evidence: As detailed in the Unlawful Confiscation of Staples' Phone section, the court allowed Staples to retrieve his phone during the trial to present critical evidence from a thumb drive that was not working. However, after he used the phone to show the evidence, it was unlawfully confiscated by DHS Officer Michael Plant. This deprived Staples of both his phone and the ability to continue using the evidence for his defense.

Lack of Opportunity to Properly Present Evidence: The court's management of the proceedings restricted Staples' ability to fully present evidence that could have supported his defense. The failure to provide adequate resources and time for Staples to present his case constitutes a violation of due process under both the Fifth Amendment and Part I, Article 15 of the New Hampshire Constitution.

The confiscation of critical evidence during the trial without any legal justification, combined with the court's procedural decisions, substantially impaired Staples' and Gerhard's ability to mount a complete defense. The denial of these procedural rights further violated their right to a fair trial.

4. Lack of Clarity in Courtroom Proceedings

At various points during the trial, Staples and Gerhard requested clarity from the court on key issues, including the legal basis for jurisdiction and the authority under which they were being prosecuted. The court failed to provide clear answers, leaving the appellants uncertain about the proceedings. This lack of clarity violated their due process rights, as they were denied essential information needed to defend themselves properly.

Moreover, the court's failure to explain why Local Rule 83.8 was being applied outside the courtroom and in public spaces further contributed to the confusion. Without clear answers from the court, Staples and Gerhard were deprived of their right to understand the charges and proceedings against them.

---

Conclusion: Due Process Violations

The due process violations in this case are numerous and severe. The court's failure to establish jurisdiction at arraignment, its refusal to provide a written or audio decision, the confiscation of critical evidence, and the procedural irregularities during the trial all undermined the appellants' right to a fair trial. These violations deprived Staples and Gerhard of their constitutional right to due process, as guaranteed by the Fifth Amendment and Part I, Article 15 of the New Hampshire Constitution.

The charges against Staples and Gerhard should be dismissed on the grounds that the proceedings violated their constitutional rights, including their right to be fully informed of the legal basis for the charges and to present a complete defense.

---

VIII. Violation of First Amendment Rights

1. Right to Record as Protected Speech Under the First Amendment

The charges against Staples and Gerhard also violate their First Amendment rights, particularly their right to record public officials and proceedings in a public forum. Recording government officials engaged in their duties is a form of free speech and expressive conduct protected by the First Amendment. The U.S. Court of Appeals for the First Circuit has expressly recognized this right in Glik v. Cunniffe, a case that directly supports the appellants' position:

"The filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within the principles of protected First Amendment activity."
(Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011)).

In Glik, the court affirmed that the public has the right to record public officials as part of the broader right to gather information about public officials' conduct, which is critical to transparency and accountability. The lobby of the James C. Cleveland Federal Building is a public forum, where the rights of Staples and Gerhard to record the activities of public officials, including their own interactions with DHS officers, are constitutionally protected.

The First Amendment guarantees freedom of speech, and that includes the right to gather information about government activities. The restrictions imposed on Staples and Gerhard not only infringe upon their right to free speech but also suppress their ability to inform the public

about government conduct—actions that are central to the First Amendment's protections of press and expression.

2. New Hampshire Constitution: Article 22 on Free Speech and Press

In addition to their First Amendment rights, Staples and Gerhard have strong protections under the New Hampshire Constitution. Part I, Article 22 guarantees the right to free speech and the freedom of the press, emphasizing the importance of transparency in government:

"Free speech and liberty of the press are essential to the security of freedom in a state: they ought, therefore, to be inviolably preserved."
(New Hampshire Constitution, Part I, Article 22).

The New Hampshire Constitution provides even broader protections for free speech and press than the First Amendment. Staples and Gerhard were engaged in legitimate journalistic activities, recording their interactions with government officials in a public space where transparency is critical. Their right to document these events is fully protected under both the U.S. Constitution and the New Hampshire Constitution.

The lobby of the James C. Cleveland Federal Building was being used as a public forum, and there was no court order or legal basis to restrict the recording of public officials in that space. The restrictions imposed on Staples and Gerhard directly contradict their constitutionally protected right to free speech and freedom of the press.

3. Public Forum Doctrine and Government Transparency

The lobby of the James C. Cleveland Federal Building is a public forum, where Staples and Gerhard had a right to engage in expressive activities, including recording. The plaque in the lobby, which dedicates the building as "a pleasing public forum for the citizens of New Hampshire," further solidifies its status as a public space where First Amendment protections apply.

In United States v. Grace, the Supreme Court held that public spaces such as sidewalks and lobbies are considered public forums, where the government's ability to restrict speech and expressive conduct is limited:

"Public places historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.' In such places, the government's ability to permissibly restrict expressive conduct is very limited."
(United States v. Grace, 461 U.S. 171, 177 (1983)).

The restrictions on Staples and Gerhard for recording in the lobby of the federal building are contrary to the public forum doctrine. Public spaces are critical areas for engaging in expressive conduct, including recording government activities. The government's actions in attempting to prohibit this expressive activity in a public forum violate the core principles of the First Amendment and the New Hampshire Constitution.

4. No Court Order or Valid Justification for Restricting Recording

There was no court order or valid legal basis provided to justify restricting Staples' and Gerhard's right to record in the lobby. Local Rule 83.8 only governs behavior inside the courtroom during judicial proceedings and does not extend to public spaces such as lobbies. Additionally, federal regulations, such as 41 CFR § 102-74.420, explicitly allow recording in public areas of federal buildings, including lobbies, unless specifically prohibited by a court order:

"Except where security regulations, rules, orders, or a court order prohibit it, persons entering in or on federal property may take photographs of space occupied by a tenant agency for non-commercial purposes, building entrances, lobbies, foyers, corridors, or auditoriums for news purposes..."
(41 CFR § 102-74.420).

Since no valid court order was produced, and there were no posted signs prohibiting recording, the restrictions placed on Staples and Gerhard were unconstitutional. The appellants' actions were protected by both federal regulations and the First Amendment, and the charges against them should be dismissed on these grounds.

---

Section Summary: Violation of First Amendment Rights

The restrictions imposed on Staples and Gerhard in the lobby of the James C. Cleveland Federal Building violate their First Amendment rights and their rights under Part I, Article 22 of the New Hampshire Constitution. Recording government officials in a public forum is a constitutionally protected activity, and the lack of a valid court order or legal basis to restrict this right renders the charges against them invalid.

For these reasons, the charges should be dismissed, and the court should recognize Staples' and Gerhard's right to record in public spaces as protected under both federal and state law.

---

Conclusion

The charges brought against Staples and Gerhard should be dismissed due to numerous constitutional violations, procedural errors, and misapplications of the law that occurred throughout the proceedings.

1. Failure to Establish Jurisdiction

The court failed to properly establish its jurisdiction at arraignment, despite challenges raised by both Staples and Gerhard. Without a clear articulation of jurisdiction, the court had no authority to proceed with the case. This foundational failure renders the entire proceeding invalid, as jurisdiction is a threshold matter that must be addressed before the court can take any substantive action. The court's failure to address this issue violated the appellants' due process rights, as established in Gonzalez v. Thaler and Steel Co. v. Citizens for a Better Environment.

2. Misapplication of Local Rule 83.8

The government improperly relied on Local Rule 83.8 to restrict recording in the lobby of the James C. Cleveland Federal Building, a public forum. Local Rule 83.8 governs only courtroom procedures and applies to judicial proceedings overseen by a presiding judge. The rule does not extend to public spaces like lobbies or hallways, and no valid court order was produced at trial to justify any restrictions on recording. The misapplication of this rule violates the appellants' First Amendment rights and their right to engage in protected expressive activities in a public space, as affirmed by United States v. Grace.

3. Violation of First Amendment Rights

The restrictions placed on Staples and Gerhard's right to record in the lobby of the federal building also violate their First Amendment rights and their rights under Part I, Article 22 of the New Hampshire Constitution. Recording public officials in a public forum is a protected form of speech and expression. The government failed to provide a legal basis, court order, or security regulation that would justify prohibiting such recording, and federal regulations under 41 CFR § 102-74.420 expressly allow recording in public spaces unless otherwise prohibited.

4. Unlawful Confiscation of Staples' Phone

The confiscation of Staples' phone by DHS Officer Michael Plant was an unconstitutional seizure that violated both Staples' Fourth Amendment rights and his rights under Part I, Article 19 of the New Hampshire Constitution. The phone was confiscated without a valid warrant, court order, or legal authorization, and Staples has yet to receive any documentation or explanation for the continued deprivation of his property. This unlawful action also infringed upon Staples' right to self-defense, as he was using the phone to record the proceedings for his own legal protection.

5. Due Process Violations

The proceedings were marred by significant due process violations, including the court's failure to provide a written or audio decision as required by Federal Rule of Criminal Procedure 23(c), the confiscation of evidence crucial to the defense, and procedural irregularities that hindered Staples' and Gerhard's ability to mount a full defense. These violations deprived the appellants of their right to a fair trial and meaningful appellate review, as guaranteed by the Fifth Amendment and Part I, Article 15 of the New Hampshire Constitution.


Request for Relief

For these reasons, Staples and Gerhard respectfully request that the court:

1. Dismiss all charges on the grounds that the government failed to establish jurisdiction, misapplied the law, and violated the appellants' constitutional rights.


2. Issue a declaratory judgment affirming that the restrictions on recording in the lobby of 55 Pleasant Street were unconstitutional and that Staples and Gerhard had a right to record under both federal and state law, or otherwise that the government did not prove ownership or jurisdiction at trial.


3. Order the immediate return of Staples' phone, which was unlawfully confiscated in violation of his Fourth Amendment rights.


4. Grant any further relief that the court deems just and proper.

---

CERTIFICATE OF SERVICE

I hereby certify that on [date], a copy of the foregoing document was served upon all counsel of record via the court's electronic filing system or by mail as appropriate.

Respectfully submitted,

Frank "Footloose" Staples
332 Merrimack Street

Manchester, NH 03103
603-722-5408
Absolutedefiance@protonmail.com

Jason Gerhard
30 Fellows Hill Road
Belmont, NH 03220
603-716-4632
Jason.Gerhard@leg.state.nh.us

Sui Juris Appellants